United States District Court
Southern District of Texas
**ENTERED**
April 25, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DANIEL G. FIDDICK | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00416 |
| | § | |
| BAY AREA CREDIT SERVICE, LLC | § | |
| | § | |
| | § | |
| Defendant. | § | |

## OPINION

Plaintiff Daniel Fiddick ("Fiddick") brings this action against Defendant Bay Area Credit Service, LLC ("BACS") pursuant to the Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA"). BACS has moved to dismiss Fiddick's Complaint under Federal Rule of Civil Procedure 12(b)(6). After carefully considering the submissions of the parties and the applicable law, the Court DENIES Defendant's Motion to Dismiss (Dkt. 17).

## FACTUAL ALLEGATIONS[1]

In early 2018, Fiddick received medical services at Carver Park Emergency Physicians ("Carver"). Due to financial hardship, Fiddick fell behind on his scheduled payments to Carver, causing him to incur debt (the "Subject Debt").

BACS is in the business of collecting consumer debts for others throughout the country. On May 25, 2018, BACS sent Fiddick a letter, seeking to collect on the Subject Debt. The May 25 letter identified the following amounts due and owing:

| SUMMARY | | | |
|---|---|---|---|
| CREDITOR | CREDITOR ACCT/BACS ACCT | DATE OF SERVICE | PRINCIPAL AMOUNT |
| CARVER PARK EMERGENCY PHY | 0096765141 32/51598197 | 01-20-18 | 71.00 |
| CARVER PARK EMERGENCY PHY | 0096765141 32/51597967 | 01-20-18 | 2,055.00 |
| TOTAL DUE | | | 2,126.00 |

Dkt. 4 at 3. The May 25 letter also stated: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid." *Id.* Fiddick did not dispute the validity of the Subject Debt.

On October 26, 2018, BACS sent Fiddick two additional letters. The two October 26 letters are identical except that at the bottom of one letter is the reference number "52040644" and the other contains reference number "52069310." The October 26 letters indicate that BACS is a debt collector seeking to collect a debt and references the Subject

---

[1] The background facts are taken from the Complaint and are accepted as true for purposes of ruling on this Motion to Dismiss. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (in reviewing a Rule 12(b)(6) motion to dismiss, a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff") (citation omitted).

2

Debt along with additional medical debts owed by Fiddick. Specifically, the letters provided the following summary of the amounts owed by Fiddick:

```
                                          SUMMARY
CREDITOR                CREDITOR ACCT/BACS ACCT   DATE OF SERVICE    PRINCIPAL AMOUNT
COMPASS POINT EMERGENCY P   00119722848/52069310      06-11-18             1,377.00
COMPASS POINT EMERGENCY P   00119722848/52069036      06-11-18                71.00
COMPASS POINT EMERGENCY P   00119687979/52040644      06-04-18                71.00
COMPASS POINT EMERGENCY P   00119687979/52040454      06-04-18             2,055.00
CARVER PARK EMERGENCY PHY   009676514132/51598197     01-20-18                71.00
CARVER PARK EMERGENCY PHY   009676514132/51597967     01-20-18             2,055.00
TOTAL DUE                                                                  5,700.00
```

Dkt. 4-1 at 3.

Fiddick claims that as a result of the multiple letters "and the conflicting information evident in all letters, [Fiddick] was confused as to the true status of the [S]ubject [D]ebt and his ability to dispute the same." Dkt. 1 at 3. Additionally, Fiddick maintains that the conflicting reference numbers in the October 26 letters confused him "as it led him to believe that he owed two different debts." *Id.* at 4. Based on these allegations, Fiddick asserts that BACS violated Sections 1692e and 1692f of the FDCPA and Section 392.304 of the TDCA through the alleged conflicting information contained in the multiple letters BACS sent him. BACS has filed a Motion to Dismiss, seeking to dismiss Fiddick's Complaint in its entirety.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint

3

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S at 556 (internal quotation marks and citation omitted). It is important to highlight that a motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Harrington v. State Farm & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotation marks and citation omitted).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

## ANALYSIS

### A. FDCPA

Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors"—practices that "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress "clearly intended the FDCPA to have a broad remedial scope." *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002). "The FDCPA should therefore be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (citation omitted).

Section 1692e provides a non-exhaustive list of unlawful practices, including "[t]he false representation of . . . the character, amount, or legal status of any debt," § 1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). Additionally, Section 1692f forbids using "unfair or unconscionable means to collect or attempt to collect any debt." Fiddick asserts claims for relief under each of these statutory provisions.

To determine whether a debt collector has violated the FDCPA, "[c]ourts evaluate any potential deception in debt-related communications under an 'unsophisticated' or 'least sophisticated' consumer standard." *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 330 (5th Cir. 2017) (citation omitted). *See also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) ("When deciding whether a debt collection letter violates the FDCPA, [the]

5

court must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.") (internal quotation marks and citations omitted). In making this determination, the court "must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). "At the same time [the court] do[es] not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder. *Id.* (internal quotation marks and alteration omitted). "The unsophisticated consumer isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 867 (S.D. Tex. 2001) (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)). A court determining when a collection letter violates the FDCPA must not look at isolated sentences, but instead needs to read the letter as a whole. *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002).

The unsophisticated or least sophisticated consumer standard is an objective test, "meaning that it is unimportant whether the individual who actually received an allegedly violative letter was misled or deceived." *Gomez v. Niemann & Heyer, LLP*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016) (citations omitted). The objective "standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained[,] and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin, Landry, deLaunay & Durand,*

6

103 F.3d 1232, 1236 (5th Cir. 1997) (citation omitted).

It is well-settled in the Fifth Circuit that FDCPA complaints alleging a collection letter is confusing or misleading are rarely dismissed at the Rule 12(b)(6) stage. This is because the inquiry under Sections 1692e and 1692f require a fact-bound determination of how an unsophisticated consumer would perceive a collection letter. *See, e.g., Daugherty*, 836 F.3d at 512 ("whether a collection letter is confusing is a question of fact") (internal quotation marks, alterations, and citation omitted); *Reynolds v. Medicredit, Inc.*, No. 5:18-CV-99-XR, 2019 WL 266974, at *4 (W.D. Tex. Jan. 18, 2019) ("Whether a letter is deceptive, misleading, or unfair to an unsophisticated consumer is generally a fact question.") (internal quotation marks and citation omitted); *Langley v. Northstar Location Sers., LLC*, No. H-16-1351, 2016 WL 4059355, at *3 (S.D. Tex. July 28, 2016) ("Texas federal district courts have thus recognized that it is appropriate to deny Rule 12(b)(6) motions on plaintiff's § 1692e and § 1692f claims when those claims are well-pleaded and raise a fact issue of how the unsophisticated or least sophisticated consumer would perceive the debt collector's communication.") (collecting cases); *Carter v. First Nat. Collection Bureau, Inc.*, 135 F. Supp. 3d 565, 569 (S.D. Tex. 2015). ("[W]hether an unsophisticated consumer would perceive a collection letter as deceptive or unfair is a question of fact that, if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion.") (collecting cases); *Prophet v. Myers*, 645 F. Supp. 2d 614, 620 (S.D. Tex. 2008) (whether language "is deceptive under the FDCPA, cannot—and should not—be resolved on a motion to dismiss") (citation omitted). "[B]ecause district judges are not good proxies for the unsophisticated consumer whose interests the FDCPA protects, district courts should be hesitant to dismiss § 1692e

and § 1692f claims." *Carter*, 135 F. Supp. 3d at 569 (internal quotation marks and citation omitted). "[D]ismissal is appropriate only when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Daugherty*, 836 F.3d at 512 (internal quotation marks and citation omitted).

Turning to the allegations in the present case, Fiddick contends the Complaint, at a bare minimum, raises factual questions as to whether the various collection letters at issue were deceptive, misleading or unfair. In opposing Defendant's Motion to Dismiss, Fiddick argues:

> On October 26, 2018, Defendant mailed two collection letters in an attempt to collect upon various medical debts purportedly owed by Plaintiff. Both letters itemized the same debts, but had different reference numbers, 52069310 & 52040644. Furthermore, the May 25, 2018 collection letter references account number 51598197, yet this debt was seemingly lumped into the debts which Defendant was seeking collection on in its October 26th correspondences. An unsophisticated consumer or the least sophisticated consumer, who loses bills and collection letters, and may forget about certain debts, would naturally be left "scratching his head" regarding the nature and status of the debts reflected in Defendant's collection letters. *See, Avila* 84 F.3d at 227. Upon receipt of Defendant's October 26th letters, an unsophisticated consumer could be deceptively led to believe that the same debt was owed twice.
>
> Additionally, the difference in account numbers in the May letter and October letters, in combination with the fact the debts referenced in the May letter was lumped into the debts referenced in the October letter, further creates a probability of confusion or deception as to the nature of status of the underlying debts referenced in Defendant's collection letters. Plaintiff would not readily understand that debts referenced in the May 25 letter were included in the October 26 letters3 – a confusion that is exacerbated by the numerous different reference numbers discussed in Defendant's collection letters.

Dkt. 19 at 16.

8

Stated simply, the disputed collection letters are not so clear that they may be deemed FDCPA-compliant as a matter of law. After reading the Complaint, the Court is unable to definitively state that "not even a significant fraction of the population would be misled by" these debt collection letters. *Daugherty*, 836 F.3d at 512 (internal quotation marks and citation omitted). Because the Court must accept as true the well-pleaded facts alleged in the Complaint, and view those facts in the light most favorable to Fiddick, the Court finds that Fiddick has plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. At this juncture, the wisest course is to simply permit the parties to proceed with discovery and then offer evidence at summary judgment or trial to show that the language in the collection letters does—or does not—confuse an unsophisticated or least sophisticated consumer. The Court, accordingly, declines to dismiss the FDCPA claim.

**B.    TDCA**

BACS next asserts that Fiddick has not sufficiently pled a cause of action under the TDCA. More specifically, BACS argues that Fiddick has (1) failed to allege that BACS committed a wrongful action in violation of the TDCA; and (2) failed to allege that he was injured as a result of BACS's wrongful actions. *See* Dkt. 17 at 5. Both these arguments are unpersuasive.

"The TDCA is modeled on the FDCPA." *Brandon v. Wells Fargo Bank, N.A.*, No. 4:11-CV-261, 2011 WL 6338832, at *11 n.3 (E.D. Tex. Nov. 30, 2011). Like the FDCPA, the TDCA prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt . . . ." TEX. FIN. CODE § 392.304(8). Like the FDCPA, the TDCA

further prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(19). In short, "[t]he conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the TDCA." *Gomez*, 2016 WL 3562148, at *6 (W.D. Tex. June 24, 2016) (internal quotation marks and citation omitted) (collecting cases).

Because the FDCPA and TDCA are isomorphic (that is, they share the same general structure but are identified by different names), the same analysis this Court applied to assess the sufficiency of the FDCPA claim will be utilized to determine the adequacy of the TDCA claim. *See, e.g., Hsu v. Enhanced Recovery Co., LLC*, 1:17-CV-128-RP, 2018 WL 315758, at *6 (W.D. Tex. Jan. 5, 2018) ("[B]ecause the language from each provision [of the TDCA] closely mirrors the language from the corresponding provisions in the FDCPA, the Court will interpret the TDCA provisions at issue here in the same fashion as it interprets their federal counterparts.") (citation omitted); *Langley v. Weinstein & Riley, P.S.*, No. H-12-1562, 2013 WL 2951057, at *9 (S.D. Tex. June 14, 2013) (observing that "the FDCPA and the TDCA are very similar," and applying the same analysis to both causes of action) (collecting cases); *Bullock v. Abbott & Ross Credit Servs., LLC*, No. A-09-CV-413 LY, 209 WL 4598330, at *2 n.3 (W.D. Tex. Dec. 3, 2009) ("The same actions that are unlawful under the FDCPA are also unlawful under the TDCA.") (citation omitted).

In the Complaint, Fiddick contends that BACS's "sending of multiple dunning letters, more than 30 days apart and which contained the same 30 day validation disclaimer,

constitutes a misrepresentation as to the character of the [S]ubject [D]ebt and is a generally false and deceptive representation made in connection with the collection of a debt." Dkt. 1 at 7. Fiddick also claims that BACS "further violated the TDCA by sending two dunning letters on the same day, attempting to collect upon the same debts, but containing two different reference numbers. Consequently, Defendant misrepresented the character and amount of the debts by alluding that Plaintiff owed the same debts twice." *Id.* As noted above, whether a collection letter is false, deceptive, or misleading under the FDCPA is generally a fact question inappropriate for a motion to dismiss based on Rule 12(b)(6). That same logic applies to a TDCA claim. Consequently, for the reasons set out above, the Court denies BACS's request to dismiss Fiddick's TDCA claims for failure to plead a alleged false or deceptive conduct. *See Prophet*, 645 F. Supp. 2d at 617 (refusing to grant a motion to dismiss TDCA claims after denying a motion to dismiss FDCPA claims because "the conduct made unlawful by [the TDCA] is virtually identical to the conduct made unlawful by the FDCPA").

Next, BACS argues that the TDCA claim should be dismissed because Fiddick has failed to allege that he incurred any actual damages as result of BACS sending multiple collection letters. Although the Court acknowledges that the Complaint fails to describe with much specificity the actual damages allegedly incurred, the Complaint does expressly seek to recover "actual damages" for a violation of the TDCA, and further complains that the "concrete harm" he has suffered includes "invasion of privacy, confusion, and aggravation." Dkt. 1 at 4, 7. Moreover, there is authority that a TDCA claim may be maintained for injunctive relief, without the need to allege or prove actual damages. *See*

11

*Guerrero v. Credit Mgmt., LP*, No. A-16-CV-987-LY, 2017 WL 7052292, at *5 (W.D. Tex. Oct. 24, 2017 ("Under the TDCA statutory damages are only available if the plaintiff successfully proves actual damages or is awarded an injunction."); *Marauder Corp. v. Beall*, 301 S.W.3d 817, 823 (Tex. App.—Dallas 2009, no pet.) (a TDCA action "may be for actual damages *or* an injunction"). Since Fiddick has undoubtedly sought injunctive relief in this case, the Court is reluctant to dismiss the TDCA claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED.

SIGNED at Galveston, Texas on April 25th, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE